UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA     ) | |
|                                                       ) | |
|           v.                                         ) | 1:12-cr-00204-JAW |
|                                                       ) | |
| JOHN THOMAS HINES                   ) | |

**ORDER ON MOTIONS IN LIMINE**

With trial looming in this possession of a firearm by a person previously convicted of a misdemeanor crime of domestic violence case, the Government filed a motion in limine mostly directed to the scope of admissible evidence concerning the Defendant's predicate conviction and conditions of probation; the Defendant responded with a motion of his own.  The Defendant also filed a second motion in limine to limit the scope of cross-examination against a defense witness regarding a prior conviction.  The Court grants in part and denies in part the Government's and the Defendant's initial motions, and grants the Defendant's second motion.

**I.     BACKGROUND**

     **A.     Procedural History**

On December 13, 2012, a federal grand jury indicted John Thomas Hines, alleging that, on March 21, 2012, after he had been convicted of a misdemeanor crime of domestic violence, he knowingly possessed in and affecting interstate commerce four firearms, in violation of 18 U.S.C. § 922(g)(9).  *Indictment* (ECF No. 1).

On April 1, 2013, the Government moved in limine for a ruling allowing the prosecutor to refer in his opening statement to Mr. Hines' probationary status and

to his admission in state court to violating the terms of his probation by possessing the firearms which are the subject of this case; for a ruling allowing the introduction of evidence regarding a dialogue which occurred during a probation check; and for a ruling precluding the Defendant from arguing that he has already been sentenced for his possession of firearms and from arguing that he should not be found in possession of firearms because he had asked his brother to remove them. *Mot. in Limine of the United States*, 1 (ECF No. 32) (*Gov't's Mot.*). Mr. Hines responded on April 8, 2013, and also filed his own motion in limine. *Def.'s Resp. to the Gov't's Mot. in Limine and Def.'s Mot. in Limine to Exclude Certain Evidence* (ECF No. 34) (*Def.'s Opp'n*); *Mot. in Limine to Exclude Certain Evidence* (ECF No. 35). On April 11, 2013, the Government replied to Mr. Hines' response and responded to his motion in limine. *Reply of the United States of America to Def.'s Resp. to the Gov't's Mot. in Limine* (ECF No. 45) (*Gov't's Reply*).

On April 15, 2013, Mr. Hines filed a motion in limine seeking to limit the Government's cross-examination concerning a prior conviction of a contemplated witness for the defense. *Def.'s Mot. in Limine to Limit the Gov't's Scope of Inquiry into a Witness's Prior Record* (ECF No. 56) (*Def.'s Second Mot.*). The Government responded on April 16, 2013. *Resp. of the United States to Def.'s Mot. in Limine to Limit the Scope of Inquiry into the Prior Record of Dalton Hines* (ECF No. 57) (*Gov't's Opp'n*).

Jury selection occurred on April 16, 2013, *Minute Entry* (ECF No. 58), and trial is set to begin on April 18, 2013. *Notice of Hr'g* (ECF No. 31).

B.     **The Facts**

1.     **The Facts According to the Government**

The Government asserts the following facts.  Mr. Hines was convicted of domestic violence assault on September 29, 2011, and was placed on probation for two years.  *Gov't's Mot.* at 2.  His conditions of probation included a prohibition against possession of firearms or alcohol.  *Id.*  On March 21, 2012, Waldo County Deputy Sheriffs Benjamin Seekins and James Porter conducted a probation check at the request of Mr. Hines' probation officer.  *Id.*  Deputy Seekins reported:

> I got out of the vehicle and approached John and asked him if he was on probation and he said he was and the only condition is that he [ ] was not to have contact with Sherry Gdovin.  I advised he had more conditions than that.  I advised that he was not suppose[d] to be in possession or use drugs or alcohol.  I said so the beer can is a violation.  I said another condition is that you are not suppose[d] to be in possession of any firearms.  John said that he had guns in the house.  He said that a month ago he had called his brother to come get them but . . . that he just had not had the time.

*Id.* at 2-3.

After four firearms were found in Mr. Hines' possession, state of Maine Probation Officer Robert Cartier filed an affidavit with the Waldo County Superior Court in support of a motion for probation revocation that stated in part:

> That on March 21, 2012 Deputy Ben Seekins stated he was on his way to John Hines' residence in reference to a complaint made that John had discharged a firearm.  I advised Deputy Seekins that John Hines had conditions of probation to refrain from using or possessing unlawful drugs and alcohol and was subject to search and test for alcohol and drugs.  I also advise[d] Deputy Seekins that John had a condition . . . of probation not to own or possess a firearm due to his domestic assault charge.  I asked Deputy Seekins that if he made contact with John Hines to conduct a Search and test for Alcohol and

3

>   drugs.  Deputy [Seekins] called back . . . and advised me that John Hines was in possession of alcohol [and] firearms . . . .

*Id.* at 3.

At the probation revocation hearing before Superior Court Justice Robert Murray, Jr. on May 31, 2012, Mr. Hines admitted the allegations in the revocation petition:

>   COURT:    John Hines.  The Court has before it the matter of State versus John Hines, CR-11 docket number 89.  You are John Hines?
>
>   JOHN HINES:  I am.
>
>   COURT:    Defendant is present in the courtroom at this time along with his attorney, Attorney Whittier.  The Court has before it a motion for probation revocation dated March 23, 2012.  It's scheduled for hearing today, is that correct?
>
>   ERIC WALKER, ESQ.:  Yes, Your Honor.
>
>   LISA WHITTIER, ESQ.:  Yes.
>
>   COURT:    What's the status of that?
>
>   MS. WHITTIER:  He's going to be admitting and we have an agreement.
>
>   COURT:    Mr. Hines, the March 23, 2012 motion for probation revocation you had previously appeared and denied the allegations in that motion.  Do I understand at this time you now wish to change your answer to admit to those allegations?
>
>   MR. HINES: Yes.

*Id.* at 3-4.  Based on Mr. Hines' admission, Justice Murray granted the motion for probation revocation and sentenced him to serve 90 days of the suspended portion of his sentence for domestic violence assault.  *Id.* at 4.

### 2. The Facts According to the Defendant

Although Mr. Hines agrees with much of the Government's version of the events, he disagrees with certain critical facts. He agrees that he was prohibited from possessing alcohol but notes that the conditions of his probation included the requirement that he "not own, possess or use any firearm or other dangerous weapon." *Def.'s Opp'n* at 4. When the Deputies searched his home, they found a crossbow hanging from the kitchen ceiling and four firearms locked in a metal gun cabinet. *Id.* These firearms were bequeathed to him by his father. *Id.*

The state of Maine moved to revoke Mr. Hines' probation on March 23, 2012; the motion alleged that he had violated the terms of his probation by:

> 1. In violation of a condition of probation #7 failure to refrain from possessing or using alcohol, to wit, on or about March 21, 2012, in the Town of Swanville, Waldo County, Maine, John Hines was found to be in possession of alcohol and having a BAC of .03.
>
> 2. In violation of condition of probation #10 failure to refrain from owning, possessing or use [sic] any firearm or other dangerous weapon . . . to wit, on or about March 21, 2012, in the Town of Swanville, Waldo County, Maine, John Hines was found to be in possession of four firearms and one crossbow.

*Id.* at 5. Mr. Hines agrees that on May 31, 2012, he answered the Judge's question by admitting "the allegations"; however, he points out that the prosecutor never set forth the evidence upon which the Government would have relied if the matter had gone to a full hearing and it was never clarified which of the allegations—possession of alcohol, possession of firearms, or possession of a dangerous weapon—he was admitting. *Id.* Mr. Hines affirms that he is willing to stipulate that he was convicted of a misdemeanor crime of domestic violence on September 29, 2011. *Id.*

Regarding Mr. Hines' second motion in limine, he states that he intends to call Dalton Hines as a defense witness, and that he learned that Dalton Hines has a felony conviction for Aggravated Criminal Trespass, a violation of 17-A M.R.S. § 402-A(a)(A). *Def.'s Second Mot.* at 1. Mr. Hines is worried that the Government will seek to introduce evidence about the "factual details underlying the conviction." *Id.* at 1-2. In response, the Government proffered the rather dramatic facts underlying Dalton Hines' conviction, but conceded that the United States "intends at this time to limit its impeachment of the defendant to the scope identified as permissible by the defense." *Gov't's Opp'n* at 2.

## II.   THE PARTIES' POSITIONS

The Government seeks to admit evidence of Mr. Hines' probationary status, the no-alcohol, no-firearm, and no-dangerous-weapon conditions of his probation, the dialogue he had with Deputy Seekins, and his admissions in state court. *Gov't's Mot.* at 6-13. Mr. Hines agrees that "some mention of Mr. Hines['] probationary status is necessary to explain why the officers were at his home and searching for weapons." *Def.'s Opp'n* at 12. However, he objects to the Government's request for "unlimited admission of evidence regarding the probation and its conditions" because he contends it would "cause unfair prejudice to him and confuse the issues that the jury must decide." *Id.* He suggests that the Government's mention of Mr. Hines' conditions of probation should be limited to statements that:

   1)  Mr. Hines was on probation for a state criminal charge; and

    2) The terms of his probation prohibited him [from] having "access to dangerous weapons."

*Id.* Mr. Hines also objects to any reference to his having been convicted of a misdemeanor crime of domestic violence; he says that he is willing to stipulate that he was prohibited from possessing a firearm but prefers to avoid reference to the reason he was so prohibited. *Id.* at 14-15.

    Regarding Dalton Hines' prior conviction, Mr. Hines contends that any "cross-examination on this issue should be limited to the number of convictions (one), the nature of the crime (Aggravated Criminal Trespass, an offense punishable by one year or more in prison) and the date of the conviction (October 29, 2010)." *Def.'s Second Mot.* at 3.

### III.    DISCUSSION

    **A.    Prohibited Person or Convicted of a Misdemeanor Crime of Domestic Violence**

    The seminal case on the admissibility of evidence of a defendant's prior conviction in a felon in possession case is *Old Chief v. United States*, 519 U.S. 172 (1997). In *Old Chief*, a defendant offered to concede that he had previously been convicted of a qualifying crime; however, the district court spurned the offer and admitted the "full record of a prior judgment." *Id.* at 174. The "full record" revealed to the jury that the defendant not only committed an assault but that the assault resulted in serious bodily injury. *Id.* at 177. In *Old Chief*, the Supreme Court observed that "there can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant." *Id.* at

185. The risk, as described by the Supreme Court, is that a juror might be lured "into a sequence of bad character reasoning." *Id.* The *Old Chief* Court noted that the defendant's offer to stipulate "amounted to an offer to admit that the prior-conviction element was satisfied." *Id.* at 186. In this circumstance, the Supreme Court concluded that the district court erred in refusing to accept the defendant's proferred stipulation. *Id.* at 192.

The Supreme Court acknowledged that the jury might "well wonder what they are being kept from knowing" and that "the prosecution with its burden of proof may prudently demur at a defense request to interrupt the flow of evidence telling the story in the usual way." *Id.* at 189. But the *Old Chief* Court concluded that the evidentiary need "to tell a continuous story has . . . virtually no application when the point at issue is a defendant's legal status." *Id.* at 190. In other words, "[p]roving status without telling exactly why that status was imposed leaves no gap in the story of a defendant's subsequent criminality." *Id.* at 191. Nevertheless, the *Old Chief* Court cautioned that a prosecutor's choice to present evidence about the underlying conviction will "generally survive a Rule 403 analysis when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of his thoughts and actions in perpetrating the offense for which he is being tried." *Id.* at 192. In short, *Old Chief* contemplates a balance between the Government's right to tell the whole story and the Defendant's right to avoid the prejudice that flows from the whole story by stipulating to the essential part of that story.

Turning to Mr. Hines' willingness to stipulate that he is a prohibited person and his preference to avoid mention of the misdemeanor crime of domestic violence, the Court will not unduly sanitize the pending charge by pretending it is something it is not.[1]  Mr. Hines is charged with possessing a firearm after having been "convicted in any court of a misdemeanor crime of domestic violence."  18 U.S.C. § 922(g)(9).  Unlike § 922(g)(1), which classifies predicate offenses based on their sentencing consequences ("punishable by imprisonment for a term exceeding one year"), § 922(g)(9) requires the Government to prove that a defendant was previously convicted of a specific type of crime—a misdemeanor crime of domestic violence.  18 U.S.C. § 922(g)(9).  Keeping any mention of Mr. Hines' prior conviction for a domestic violence crime from the jury and requiring the Government to refer instead to the non-statutory concept of a "prohibited person" would leave a gap in the Government's narrative.  *United States v. Morales-Aldahondo*, 524 F.3d 115, 120 (1st Cir. 2008) ("The government need not accept a defendant's attempt to use a stipulation to overcome the right of the government to make a full presentation of the crime currently charged") (internal punctuation omitted).

When a defendant stipulates to his prohibited status in a trial for the analogous crimes of possession of a firearm by a felon or possession of a firearm by a person previously committed to a mental institution, Judge Hornby's Model Jury Instructions do not recommend use of the term "prohibited person."  *See Judge D.*

---

[1]  Mr. Hines may have waived this argument.  During voir dire, at Mr. Hines' insistence, the Magistrate Judge questioned the jury panel about their views of domestic violence.  The jury is therefore prepared for evidence about domestic violence and has been screened for their potential bias against domestic violence.  Having alerted the jury to the domestic violence issue in voir dire, Mr. Hines is in an awkward position to insist that evidence of domestic violence be excluded.

*Brock Hornby's 2012 Revisions to Pattern Crim. Jury Instructions for the District Courts of the First Circuit* § 4.18.922(g) (updated March 12, 2013). The model instructions recommend informing the jury that "[t]he parties have stipulated that [defendant] has been convicted of a crime which is punishable by imprisonment for a term exceeding one year" or that the "[defendant] was previously involuntarily committed to a mental institution." *Id.*

Furthermore, as has been seen, Mr. Hines concedes that "some mention of Mr. Hines['] probationary status is necessary to explain why the officers were at his home and searching for weapons." *Def.'s Opp'n* at 12. Under Mr. Hines' proposal, the jury would learn that he was a prohibited person and was on probation at the time of the search, but would not learn why he was so prohibited or on probation. The Court concludes that the risk of juror speculation and the inability of the Government to place the events in context outweigh any potential prejudice to Mr. Hines. Finally, to the extent that Mr. Hines is concerned that a jury might misuse the evidence of his conviction to conclude that he is a person of bad character, he is free to propose an instruction to the Court to be given with the admission of the evidence or in instructions that clarify the limited purpose of the evidence of the prior conviction.

At the same time, the Court readily agrees with the parties that it would be inappropriate under *Old Chief* to allow evidence about the facts underlying the prior conviction during the Government's case-in-chief. *Old Chief*, 519 U.S. at 190-91; *United States v. Joost*, 133 F.3d 125, 128 (1st Cir. 1998); *United States v.*

*Walston*, No. CR-04-78-B-W, 2005 U.S. Dist. LEXIS 10727, *10 (D. Me. June 1, 2005). According to the Government, the parties have entered into a stipulation regarding that prior conviction:

> The Defendant was convicted in Maine Superior Court on September 29, 2011 of domestic violence assault which is a misdemeanor crime of domestic violence.

*Gov't's Reply* at 9. This stipulation maintains the balance *Old Chief* directs. However, if the conviction becomes relevant for some independent reason, the Court may be required to revisit these limitations. *Joost*, 133 F.3d at 129 (stating that the rule against admitting the facts of conviction "does not apply if the nature of the conviction is relevant for an independent purpose").

### B.  Evidence of Probation Violation

The Government seeks to place before the jury evidence that Mr. Hines was on probation on March 21, 2012, that his probation allowed the Government to search his residence for firearms and other dangerous weapons, that they found firearms at his premises, that he was charged with a firearms violation of his probation, and that he admitted this violation before the state superior court, a violation charging possession of the same weapons that the Government is now charging criminally against Mr. Hines. *Gov't's Mot.* at 4-13. Mr. Hines concedes the admissibility of evidence that he was on probation on March 21, 2012, that the deputies were legally authorized to search his house because of his probationary status, and that the conditions of his probation prohibited his possession of dangerous weapons, but he objects to any further evidence. *Def.'s Opp'n* at 5-14.

11

How much of the facts regarding the probation violation should be placed before the jury has to be broken down. First, the parties agree that the fact he was on probation may be admitted; the Court agrees.

Second, the Government seeks to place his conditions of probation before the jury; Mr. Hines agrees to only a limited disclosure of those conditions—namely, that he not possess any dangerous weapons. The Court concludes that the admission of the entire set of probation conditions would be marginally, if at all, relevant and that the prejudicial impact exceeds any probative value. FED. R. EVID. 403. For example, the entire set of probation conditions includes submitting to random searches and testing for drugs and alcohol and completing a substance abuse and psychological evaluation. *See Gov't's Mot.* Attach. 1, *Conditions of Probation*, 1 (ECF No. 32-1). There is no suggestion that these conditions have any relevance to whether Mr. Hines possessed a firearm, and the jurors might well speculate that he has drug, alcohol, and psychological problems, which could affect their fair evaluation of the evidence.

Third, the Government seeks to place into evidence his probation condition prohibiting his ownership, possession, or use of "any firearm or dangerous weapon." *Id.* Mr. Hines agrees only that the dangerous weapon portion of this condition is admissible. *Def.'s Opp'n* at 11-12. The Court disagrees with Mr. Hines. The prohibition against his possession of firearms explains why the deputies asked Mr. Hines about his possession of firearms and why they were searching for firearms when they searched his home.

Fourth, the Government seeks to admit into evidence the subsequent probation revocation proceedings in Maine Superior Court, including what it contends was Mr. Hines' admission that he possessed firearms. *Gov't's Mot.* at 8-13. Mr. Hines objects. *Def.'s Opp'n* at 5-11. Here, the Court agrees with Mr. Hines. The Court carefully reviewed the transcript of the state probation revocation colloquy among the Justice of the Superior Court, the state prosecutor, defense counsel, and Mr. Hines, and concludes that it is not clear exactly what violation Mr. Hines was admitting that he committed: one, some, or all of the alleged violations. The state revocation was based on alleged violations of the prohibitions against alcohol, firearms, and dangerous weapons, and Mr. Hines entered a general admission. By contrast, in this case Mr. Hines is being charged only with possession of a firearm. In addition, Mr. Hines contends that the definition of "possession" differs under state and federal law. *Def.'s Notice of Intent to Raise an Issue of Foreign Law Under Rule 26.1* (ECF No. 60). To allow evidence and argument during the Government's case-in-chief as to what was intended by the revocation colloquy would confuse the issues before the jury. FED. R. EVID. 403.

### C. The Conversation Between Deputy Seekins and John Thomas Hines

The Government seeks to admit the conversation between Deputy Seekins and Mr. Hines when the Deputies arrived at his home on March 21, 2012:

> I got out of the vehicle and approached John and asked him if he was on probation and he said he was and the only condition is that he [ ] was not to have contact with Sherry Gdovin. I advised he had more conditions than that. I advised that he was not suppose[d] to be in possession or use drugs or alcohol. I said so the beer can is a violation. I said another condition is that you are not suppose[d] to be in

>       possession of any firearms. John said that he had guns in the house.
>       He said that a month ago he had called his brother to come get them
>       but . . . that he just had not had the time.

*Gov't's Mot.* at 2-3. Mr. Hines objects to any reference to his probation conditions. *Def.'s Opp'n* at 11. The Court disagrees. The jury will already be aware that Mr. Hines was on probation and Mr. Hines' admission to Deputy Seekins that he had guns in the house is a significant admission in a gun possession charge. The Court views the conversation about conditions of probation leading up to Mr. Hines' admission as placing those comments in context. In fact, it is difficult to imagine how this conversation could be properly edited to exclude any mention of his conditions of probation. Furthermore, the no-firearms condition under his state probation is echoed in federal law. Mr. Hines cannot argue that he was entitled to possess a firearm under federal law so the additional state prohibition is redundant. Although Mr. Hines may worry about prejudice resulting from the revelation to the jury that he was prohibited from contacting Ms. Gdovin and from possessing drugs and alcohol, those conditions are unremarkable for a person convicted of a misdemeanor crime of domestic violence. Unlike the introduction of the actual conditions of probation, which include additional irrelevant details, the admission of the dialogue with Deputy Seekins does not unduly prejudice Mr. Hines. The Court will, upon request, caution the jury that Mr. Hines is not on trial for violating the conditions of his probation.

    **D.**    **The Charging Language in the Indictment**

Mr. Hines seeks to exclude from evidence the following underlined language in the indictment concerning the nature of the state misdemeanor charge:

> On about the 21st day of March, 2012, in the District of Maine, the defendant, **JOHN THOMAS HINES**, <u>who had been convicted of a misdemeanor crime of domestic violence, to wit: Domestic Violence Assault, 17-A M.R.S.A. § 207-A, Waldo County Superior Court (September 29, 2011)</u>, did knowingly possess in and affecting interstate commerce, the following firearms . . .

*Indictment* at 1. The parties have apparently entered into the following stipulation:

> The Defendant was convicted in Maine Superior Court on September 29, 2011 of domestic violence assault, which is a misdemeanor crime of domestic violence.

*Gov't's Reply* at 9. It is unclear how the additional specificity in the indictment would prejudice the Defendant, since the only difference between the allegations in the indictment and the contents of the stipulation is the reference to the Maine statute. The Court will discuss this issue with counsel to determine whether the indictment should be altered and what prejudice the Defendant fears.

### E. The Telephone Call Defense

The Government seeks a ruling "which will prohibit argument that the defendant should not be found in possession" of the firearms because he made a telephone call to his brother some weeks prior to his arrest requesting that his brother pick up the guns. *Gov't's Mot.* at 13-14. The Government contends that such an argument would invite jury nullification. *Id.* Mr. Hines states that he "does not intend to make this argument per se, but believes that the evidence of this fact is relevant to his intent to possess the firearms and is admissible at trial."

15

*Def.'s Opp'n* at 3-4. He notes that he "has an absolute right to present a defense." *Id.* at 4.

The Court notes that Mr. Hines referred to the call in his dialogue with Deputy Seekins, which the Government has indicated it intends to put before the jury. At this stage, the Court declines to exclude any evidence regarding the telephone call. It is not clear from Mr. Hines' response how he intends to argue that a telephone call made some weeks prior to his arrest affects his "intent to possess the firearms," but he has a right to present a defense in accordance with the law. The Court will provide an appropriate instruction to the jury regarding possession after considering any proposed instructions submitted by the parties.

### F. The Limited Scope of the Court's Rulings

Finally, if Mr. Hines takes the stand, the Court's rulings on the admissibility of evidence during the Government's case-in-chief will be revisited. The Government might well be allowed to cross-examine him on whether he admitted to a Justice of the Maine Superior Court that he possessed the firearm. If Mr. Hines takes the stand, the Court will discuss these rulings with counsel and in any event expects counsel for the Government to approach the bench and obtain a final ruling before questioning on areas excluded by this Order.

### G. Dalton Hines' Prior Conviction

The parties agree that if Dalton Hines is called as a witness, the Government may impeach him about his prior Aggravated Criminal Trespassing felony conviction by asking him about the number, nature, and date of any prior

convictions, as well as whether any prior conviction was for a felony. Before the Government seeks to go beyond this limited range of questions and ask further questions, it must alert the Court and obtain an order on whether it will be allowed to do so.

## IV.  CONCLUSION

The Court GRANTS in part and DENIES in part the Motion in Limine of the United States (ECF No. 32), GRANTS in part and DENIES in part John Thomas Hines' Motion in Limine to Exclude Certain Evidence (ECF No. 35), and GRANTS the Defendant's Motion in Limine to Limit the Government's Scope of Inquiry Into a Witness's Prior Record (ECF No. 56).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 17th day of April, 2013